Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6740 | **DATE** | 1/4/2002 |
| **CASE TITLE** | David J. Beedie, et al. Vs. Battelle Memorial Institute | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendant's motion to dismiss (3-1) is denied. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 07 2002 | |
| | Notified counsel by telephone. | | date docketed | 9 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | JAN 07 2002 | |
| | | | date mailed notice | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID J. BEEDIE and JOHN GORMAN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BATTELLE MEMORIAL INSTITUTE, ) <br> ) <br> Defendant. ) | 01 C 6740 <br><br> Judge George W. Lindberg |

**MEMORANDUM OPINION AND ORDER**

Defendant Battelle Memorial Institute has moved pursuant to Federal Rules of Civil Procedure 12(b) and 9(b) to dismiss plaintiffs' complaint. For the reasons stated below, the motion to dismiss is denied.

**DOCKETED**
**JAN 0 7 2002**

**I. Factual Background**

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in plaintiff's favor. MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc., 62 F.3d 967, 972 (7th Cir. 1995). According to the allegations in the complaint, plaintiff David Beedie has served as a director and officer of Purizer Corporation ("Purizer") from December 31, 1999 to the present. Plaintiff John Gorman has served as a director of Purizer from August 31, 1999 to the present. Defendant is a science and engineering company that conducts science and technology research for customers for the development and commercialization of their products and services.

Prior to the time when plaintiffs became affiliated with it, Purizer acquired the rights to an oxidation purification technology (the "Purizer Vapor"). In December 1998, Purizer retained defendant to test the efficacy of the Purizer Vapor. Defendant and Purizer eventually entered into numerous other research and development services agreements through June 8, 2000,

including a Master Research and Development Agreement. Pursuant to the original December 1998 agreement, defendant designed and built generators to produce the Purizer Vapor, and developed formulas for the production of the Purizer Vapor. On December 31, 1999, defendant advised Purizer that the Purizer Vapor was significantly superior to other types of disinfecting processes.

On March 1, 2000, Purizer's officers and directors, working with defendant, decided to raise capital by issuing a class of preferred stock in Purizer. Purizer and defendant prepared a business plan, which identified defendant as Purizer's research and development partner. The business plan stated that defendant had validated the efficacy of the Purizer technologies, and that defendant had determined that the Purizer Vapor is five times more effective than ozone. The statements regarding the effectiveness of the Purizer Vapor, and defendant's validation of it, were false. In addition, defendant failed to advise Purizer to include a statement in the business plan that defendant had no scientifically supported data demonstrating that the Purizer Vapor was more effective than ozone. The business plan was distributed to potential investors.

In April and May 2000, defendant participated in presentations to potential investors, including plaintiffs. In at least one of the investor presentations, a Battelle representative stated that the Purizer Vapor is up to five times more powerful than ozone; potential investors at that presentation were not told that defendant had no scientifically supported data demonstrating that the Purizer Vapor was more effective than other processes. Defendant also either prepared or contributed materially to slide presentations that were included in each of the investor presentations. The slide presentations contained statements that the Purizer Vapor is composed in part of singlet oxygen ions and hydroxyl radicals, that the Purizer Vapor is five times more powerful than ozone, and that it is less corrosive and has a lower capital cost and power consumption than ozone. The statements regarding the effectiveness of the Purizer Vapor as compared to ozone, and regarding the composition of the Purizer Vapor, were false.

On June 12, 2000, Purizer distributed an offering memorandum to plaintiffs and others.

The offering memorandum did not contain a statement that defendant had no scientifically supported data demonstrating that the Purizer Vapor was more effective than other processes.

In July 2000, Beedie invested $250,000 in Purizer preferred stock by forgiving a loan he had previously made to Purizer, in exchange for the stock. Gorman invested $1,000,000 in Purizer preferred stock by forgiving a loan he had made to Purizer, in exchange for the stock.

In late 2000 or early 2001, an independent researcher retained by Purizer determined that the Purizer Vapor did not contain any highly reactive oxidative species of short-lived oxygen ions, and that the Purizer Vapor was no more effective than ozone.

Plaintiffs filed this action, alleging a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5; common law fraud; and negligent misrepresentation.

## II. Discussion

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must consider "whether relief is possible under any set of facts consistent with the allegations of the plaintiff's complaint." Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999). That is, if it is possible to hypothesize a set of facts that would entitle the plaintiff to relief, consistent with the allegations in the complaint, dismissal under Rule 12(b)(6) is inappropriate. Graehling v. Village of Lombard, 58 F.3d 295, 297 (7th Cir. 1995).

### A. Scienter

Defendant first argues that the fraud claims in Counts I and II should be dismissed for failure to adequately plead scienter. To establish liability under section 10(b) and Rule 10b-5, a plaintiff must prove that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir. 1997). Federal Rule of Civil Procedure 9(b) requires that, in fraud cases, "the circumstances constituting

fraud...be stated with particularity." The Private Securities Litigation Reform Act ("PSLRA") contains an even more rigorous pleading standard, requiring plaintiffs in securities fraud cases to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Seventh Circuit has yet to address just how rigorous the PSLRA's pleading standard is. Cases in the Northern District of Illinois generally have followed the Second Circuit's pleading standard, which requires plaintiffs to allege facts either (1) showing that the defendant had both motive and opportunity to commit fraud; or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. See, e.g., In re Westell Techs., Inc., No. 00 C 6735, 2001 WL 1313785, at *10 (N.D. Ill. Oct. 26, 2001); Danis v. USN Communications, Inc., 73 F. Supp. 2d 923, 937 (N.D. Ill. 1999); Rehm v. Eagle Fin. Corp., 954 F. Supp. 1246, 1253 (N.D. Ill. 1997). For the purposes of showing strong circumstantial evidence of recklessness, reckless conduct is "highly unreasonable [conduct]" – "an extreme departure from the standards of ordinary care...to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Rehm, 954 F. Supp. at 1255.

Here, the complaint alleges that defendant is an international science and engineering company that conducts science and technology research. According to the complaint, defendant falsely represented to plaintiffs that it had validated the efficacy of the Purizer Vapor, that the technology contained the singlet oxygen ion and hydroxl radicals, and that the Purizer Vapor was five times more effective than ozone. These allegations are sufficient at this early stage of litigation to plead strong circumstantial evidence of conscious misbehavior or recklessness, and to satisfy the pleading requirement of Federal Rule of Civil Procedure 9(b).

### B. Loss Causation

Defendant next argues that the fraud claims should be dismissed because plaintiffs failed to adequately plead loss causation. Loss causation is the standard common law fraud rule, and has been borrowed by the federal courts for use in federal securities fraud cases. Bastian v.

4

Petren Res. Corp., 892 F.2d 680, 683 (7th Cir. 1990). A plaintiff bringing a securities fraud case under Rule 10b-5 must plead loss causation by alleging that the defendant's misrepresentations caused the plaintiff's injuries.[1] Caremark, Inc., 113 F.3d at 648. That is, plaintiffs must allege that they would not have suffered a loss on their investment if the facts were as they believed them to be when they purchased the securities. In re VMS Sec. Litig., 752 F. Supp. 1373, 1399 (N.D. Ill. 1990).

Here, plaintiffs have alleged that the success or failure of their investment in Purizer preferred stock depended on the commercial viability of the Purizer Vapor, that defendant falsely represented that the Purizer Vapor had considerable commercial potential because it was more effective than competing technologies, and that in actuality the process was no more effective than existing technologies. Plaintiffs allege that the effect of defendant's "scheme" was that plaintiffs purchased Purizer stock at artificially elevated prices. Viewing these allegations in a light most favorable to plaintiffs, it is reasonable to conclude that the true value of plaintiffs' investment is lower than the price they paid, as a result of defendant's misrepresentations. Plaintiffs have adequately alleged loss causation.

### C. Disclaimers

Defendant next argues that disclaimers contained in the business plan bar plaintiffs' fraud claims based on that document, especially given plaintiffs' status as officers and directors of Purizer, the company that issued the business plan. The business plan states:

> While Purizer believes the information herein to be accurate, Purizer does not make any representations or warranties with respect to its accuracy or completeness, and expressly disclaims any and all liability for any representations or warranties, express or implied, contained in or omitted from, this Business Plan or any other written or oral communication transmitted or made available.[2]

---

[1] "Transaction causation," by contrast, requires an allegation that the plaintiff would not have invested but for the defendant's misrepresentations. Caremark, 113 F.3d at 648.

[2] Defendant attaches a copy of the business plan to its motion to dismiss. Because plaintiffs refer to this document in the amended complaint and it is central to plaintiffs' claims,

5

The business plan further states that it should not be relied upon for purposes of making a decision to invest in Purizer.

Defendant cites Carr v. CIGNA Sec., Inc., 95 F.3d 544 (7th Cir. 1996), in support of its argument. However, that case stands for the proposition that clear written warnings control over conflicting oral statements. See Carr, 95 F.3d at 547 (where oral statement that investment is safe contradicts written disclaimer that investment is risky, written disclaimer controls). Carr is inapplicable where the alleged misrepresentations do not specifically conflict with the disclaimer. See Fugman v. Aprogenex, Inc., 961 F. Supp. 1190, 1197-98 (N.D. Ill. 1997) (false oral statement that flaws in diagnostic test system had been fixed and that the system was ready for market did not contradict written disclaimer that investment was risky). Moreover, boilerplate disclaimers are ineffective as a shield from liability for affirmative misrepresentations. See Xerox Fin. Servs. Life Ins. Co. v. Salomon Bros., Inc., 1992 WL 151923, at *7 (N.D. Ill. June 19, 1992).

Here, the business plan's disclaimer is a general one, and does not address specific statements in the business plan, such as that "Battelle has validated the efficacy of Purizer technologies," that the Purizer Vapor is composed of the singlet oxygen ion and hydroxyl radicals, and that defendant "has determined that the Purizer Vapor is five times more effective than an equivalent amount of ozone." In addition, the alleged misrepresentations appear in writing, in the same document that contains the disclaimer, a circumstance that does not raise the danger of imposing liability based on later-misremembered or invented oral statements that are inconsistent with written warnings. See Associates in Adolescent Psychiatry v. Home Life Ins. Co., 941 F.2d 561, 571 (7th Cir. 1991); Carr, 95 F.3d at 547.

Nor does the fact that plaintiffs were directors, and Beedie an officer, automatically render any reliance they may have placed on the business plan invalid as a matter of law. The

---

the court can consider it without converting the motion to dismiss to one of summary judgment. See Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993).

complaint is silent regarding plaintiffs' individual participation in the preparation of the business plan and regarding what, if any, knowledge plaintiffs had by virtue of their positions. Taking the allegations of fraud based on misrepresentations in the business plan in the light most favorable to plaintiffs, as the court must, they survive the motion to dismiss.

Defendant also argues that its representatives' oral statements at the investor presentations were projections, and thus are not actionable. Predictions and forecasts typically are not actionable under section 10(b). Arazie v. Mullane, 2 F.3d 1456, 1468 (7th Cir. 1993). However, the oral statements attributed to defendant's representatives were not such forward-looking statements. The slide presentations, to which defendant is alleged to have contributed, included representations that the Purizer Vapor contains the singlet oxygen ion and hydroxyl radicals, and that it is five times more powerful than ozone. The complaint alleges that Battelle representatives made similar statements in speeches at investor presentations. These representations were statements of present fact.

Nor does qualifying these statements by stating that they were matters of the speaker's belief transform the statements into predictions, as defendant suggests. Although predictions may not constitute fraud, "intentions and beliefs are 'facts' for this purpose when they are open to objective verification." Eckstein v. Balcor Film Investors, 8 F.3d 1121, 1132 (7th Cir. 1993). Defendant's statement that the Purizer Vapor is up to five times more effective than ozone is a statement that is open to objective verification, however defendant's representative styled it. Defendant's alleged oral misrepresentations thus are actionable.[3]

### D. Economic Loss Doctrine

Defendant argues that Count III, alleging negligent misrepresentation, should be dismissed because it seeks the recovery of economic loss, which is not recoverable under Illinois

---

[3] Given that the court has found that a number of alleged misrepresentations in the business plan and oral presentations survive the motion to dismiss, the court does not address the operation of warnings and disclaimers in the information statement.

7

law. Plaintiffs respond that the economic loss doctrine does not apply because defendants are in the business of supplying information for the guidance of others in their business transactions.

Illinois law generally prohibits recovery in tort for purely economic loss. Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443, 448 (Ill. 1982). An exception is made, however, for negligent misrepresentations made by defendants who are in the business of supplying information for the guidance of others. Id. at 452. Where a defendant provides information that is merely ancillary to a service or the sale of a product, it is not in the business of supplying information for the guidance of others in their business dealings. Tolan and Son, Inc. v. KLLM Architects, Inc., 719 N.E.2d 288, 296 (Ill. App. Ct. 1st Dist. 1999). On the other hand, where the value of a defendant's services lies in the analytical work, that is, where the end product is the ideas themselves, it is in the business of supplying information for the guidance of others in their business dealings. Id. at 297. Where a defendant supplies both information and non-informational services or goods, "[t]he critical question...is whether the information is an important part of the product offered." Id.

The question of whether defendant qualifies as being in the business of supplying information for the guidance of others is a difficult one because its responsibilities appear to encompass a mixture of informational and non-informational services. The negligent misrepresentation claim characterizes defendant's primary business as "provid[ing] scientific advice and scientific information to clients and assist[ing] clients to develop and commercialize products and services," and other portions of the complaint make clear that defendant's responsibilities included designing and building generators. At this stage, however, it would be premature to determine whether defendant's act of supplying information was merely incidental to its non-informational services. Accordingly, the motion to dismiss Count III is denied.

### E. Standing

Finally, defendant argues that plaintiffs do not have standing to bring this cause of action, since as directors of Purizer, they were involved in the issuance of the stock and documents that

8

are the subject of the action. According to defendant, plaintiffs are "insiders" in Purizer that cannot maintain a suit against another insider such as defendant. See Harnett v. Ryan Homes, Inc., 360 F. Supp. 878, 885 (W.D. Pa. 1973) ("[i]t is axiomatic that one insider cannot maintain a suit against another"). "Insiders," however, are simply "people who, by reason of their activities within a corporation, have access to information capable of being exploited, or information that would negate the harmful effects of a nondisclosure or misrepresentation." Rosenbloom v. Adams, Scott & Conway, Inc., 552 F.2d 1336, 1339 (9th Cir. 1977). Directors and officers of a corporation, or even the president, will often have such knowledge and information, but "neither the knowledge nor the information invariably attaches to those positions." Wright v. National Warranty Co., 953 F.2d 256, 261 (6th Cir. 1992). Whether plaintiffs had knowledge that would be relevant to the misrepresentations of which they complain is an issue more properly handled at a later stage of litigation.

**ORDERED:** The motion to dismiss is denied.

ENTER:

*[signature: George W. Lindberg]*

George W. Lindberg
Senior United States District Judge

DATED: JAN 0 4 2001

9